| STATE OF LOUISIANA | * | NO. 2025-KA-0284 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| JASON SPECHT | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 563-312, SECTION "G"
Judge Nandi Campbell
\* \* \* \* \* \*
**Chief Judge Roland L. Belsome**
\* \* \* \* \* \*

(Court composed of Chief Judge Roland L. Belsome, Judge Daniel L. Dysart,
Judge Pro Tempore  Dennis R. Bagneris)

Barry S. Ranshi
The Barry S. Ranshi Law Firm LLC
4224 Florida Ave.
Suite 6
Kenner, LA 70065

      COUNSEL FOR DEFENDANT/APPELLANT

Jason R. Williams
District Attorney
Parish of Orleans
Brad Scott
Assistant District Attorney
619 South White Street
New Orleans, LA 70119

      COUNSEL FOR STATE/APPELLEE

**AFFIRMED**
**March 20, 2026**

*RLB*

*DLD*

*DRB*

Jason Specht ("Appellant") appeals his conviction for aggravated battery in violation of La. R.S. 14:34. He raised a defense of self-defense at trial and on this appeal. He also argues that the evidence was insufficient to support the conviction. For reasons that follow, we affirm the conviction.

### Proceedings below

The case was initiated by a bill of information on September 5, 2024. It was tried to a jury on January 28, 2025. Appellant was convicted by unanimous verdict. The judge imposed a sentence of three years (suspended) and two years of probation. Appellant raises no issue regarding the sentencing in this appeal but contests the jury's guilty verdict.

### Facts

Defendant is an artist who makes his living drawing caricatures on Jackson Square in New Orleans. The victim, Emery Young ("Emery")[1] was spending the day sightseeing in the French Quarter on April 14, 2024. He was accompanied by

_____

[1] The informality of designating members of the Young family by their first names is necessary for the purpose of efficiently distinguishing these individuals who all share the same last name.

1

his wife, Arketha Bryant-Young ("Arketha"); his daughter, Jasmine Young ("Jasmine") and two of his grandchildren, "Emery III" and "Zoriana."

At some point, Jasmine and Zoriana decided that they wanted to have a caricature drawn of themselves. Jasmine sat first for her portrait. While Appellant was drawing Jasmine's caricature, Appellant engaged in a verbal altercation with a bystander. Appellant was angry because the bystander was playing religious music very near to his work area and he believed the music was driving customers away. After Jasmine's drawing was complete, Zoriana was seated for her caricature. While Appellant was drawing, the bystander continued to play music. Appellant asked Jasmine to talk to the bystander and convince him to stop playing the music in his work area. Jasmine chose not to get involved in that dispute. In response, Appellant stopped drawing and tore up the work that he had completed. Jasmine became upset and began quarreling with Appellant.

Emery had been watching Jasmine and Zoriana from a bench nearby. When he saw that things had gone awry, he walked over to the area where Appellant had been working. Here, the recollections of Emery and Appellant diverge in opposite directions.

### Emery's testimony

Emery testified that he placed himself between Jasmine and Appellant in order to end the argument between them. He told Appellant, "we're about to walk away" and "[j]ust leave it alone." Emery testified that after expressing his intent to walk away, he turned his back to Appellant and started walking with Jasmine and

Zoriana. He said that Appellant pursued him and his family members and continued to argue. At some point, Emery said, he turned around and grabbed Appellant by the collar and asked, "did you hear what I said? . . . just walk away, let it be." When Appellant continued to follow closely behind him, Emery testified that he turned and grabbed Appellant's collar again. He testified that Appellant struck him a couple of times before he realized he was being stabbed. Emery said that when he realized this, he "punched [Appellant] a few times" and then someone pulled him back. While Emery was being held back, Appellant stabbed him in the groin and blood began "gushing out."

### Appellant's testimony

According to Appellant, Emery was strangling him with his own shirt collar and punching him before he drew his knife and began stabbing Emery. He testified that he was in fear for his life and "had been pleading with Emery to, don't do this, let me go." He claimed in testimony that he could not avoid fighting because Emery would not let him go. He said, "if I hadn't used the knife…he would have continued to beat me until I was brain dead."

### The videotape

In addition to the witness testimony, there are three videos of the altercation. A review of the videos shows fairly clearly that Appellant was pulling a knife from his pocket before he was struck. It also shows that Emery was holding a piece of Appellant's shirt at the time but it does not appear that Emery was using the shirt to strangle Appellant in the manner that Appellant testified.

3

There is no dispute that both men were injured in the altercation. Emery was stabbed in the arm, abdomen, and groin. Appellant suffered a black eye and testified that he had a concussion.

### *Assignment of error*

Appellant makes a single assignment of error. He argues that the evidence was constitutionally insufficient to support Appellant's conviction for aggravated battery. Specifically, Appellant argues that the State failed to meet its burden of proving beyond a reasonable doubt that Appellant was not acting in self defense.

### *Standard of review*

When a defendant asserts that the State has failed to meet its burden of proof, an appellate court must review the record in its entirety to determine whether the evidence was sufficient to convince a rational trier of fact that all elements of the crime were proven beyond a reasonable doubt. In making that determination, courts must "view the evidence in the light most favorable to the prosecution." *State v. Johnson*, 2003-1228, p.4 (La. 04/14/04); 870 So.2d 995, 998 (citing *State v. Sylvia*, 01-1406, p. 2 (La. 4/9/03); 845 So.2d 358, 361); *Jackson v. Virginia*, 443 U.S. 307.

### *Analysis and discussion*

Before we reach the issue of sufficiency of evidence of self defense, we must address the State's argument that Appellant is precluded from arguing for a finding of self defense in this appeal. The State argues that Appellant failed to give timely notice of his intention to raise self defense as an issue at trial. La. C. Cr. P. art. 390(B) requires a defendant to give notice of its intent to assert a justification of self defense within 10 days after the State has moved for discovery.

4

However, a trial court may permit a defendant to provide notice of its intent at any time before commencement of trial for good cause. In the case before us, the State did not file a motion for discovery until January 27, 2025, the day before trial. By contrast, Appellant filed a Motion to Include Jury Instruction for Self-Defense on January 10, 2025. As Appellant gave notice of his intent before the State filed its motion for discovery, the notice was timely. Appellant is entitled to have his argument of self defense heard by this court.

"In any criminal proceeding in which the justification of self-defense is raised, the state shall have the burden to prove beyond a reasonable doubt that the defendant did not act in self-defense." La. C.Cr.P. art. 390; *State v. Wiggins,* 56, 427, p. 9 (La. App. 2 Cir. 10/1/25), 421 So. 3d 1172, 1180.

Following the trial court's jury instruction and considering the evidence presented, the six-member jury reached a unanimous verdict rejecting Appellant's self defense justification. As noted above, this court must determine whether the evidence was sufficient to convince a rational trier of fact that Appellant did not act in self defense. In making this determination, we must assess the evidence in the light most favorable to the State. Therefore, we make the following catalog of evidence that was available to the jury:

1. Emery testified that he attempted to extricate his family members and himself from the disagreement with Appellant by using verbal de-escalation, and physically walking away. He testified further that Appellant continued the verbal sparring and physically kept himself in close contact with his victim. This evidence alone can support a rational juror's decision that Appellant was the aggressor in the confrontation thereby depriving him of the defense of justification under La. R.S. 14:21, which provides that:

5

> A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.

2.    The videos that depicted the stabbing showed, fairly clearly, that Appellant drew his knife from his pocket before Emery struck him. As our court held in *State v. Bracken, 2024-0208, p. 6 (La. App. 4 Cir. 5/5/25), 414 So. 3d 1039, 1043*, "[i]n a non-homicide case, the analysis of self-defense as a justification is a two-step inquiry: (1) a subjective inquiry into whether the force was apparently necessary; and (2) an objective inquiry into whether the force used was reasonable under the circumstances." (Citations omitted.) The videos alone could have convinced a rational juror that the force used by Appellant was not reasonable.

3.    Jasmine testified that Appellant initiated the hostilities by verbally sparring with the bystander and tearing up the caricature for which Zoriana had posed. In addition, both Jasmine and Arketha supported Emery's assertion that he tried repeatedly to remove the family from the dispute with Appellant and from Appellant's work area. Jasmine and Arketha both testified in agreement with Emery that Appellant refused to let the disagreement go and that he followed the family and continued the verbal harassment after the Youngs had taken active steps to disengage. This testimony, taken in the light most favorable to the State,[2] would be sufficient to justify the jury's determination that Appellant did not act in self defense.

---

[2] As required by *Jackson v. Virginia*, 443 U.S. 307.

6

*Conclusion*

The evidence adduced at trial was sufficient to support the jury's verdict that rejected Appellant's claim of self defense.  We therefore affirm Appellant's conviction.

**AFFIRMED**